[Cite as *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96166

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WAYMAN L. ROSEBERRY

DEFENDANT-APPELLANT

**JUDGMENT:
AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CR-540130

**BEFORE:**   Keough, J., S. Gallagher, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   November 17, 2011

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Margaret A. Troia
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, Judge.

{¶ 1} Defendant-appellant, Wayman L. Roseberry ("Roseberry"), appeals his convictions. For the reasons that follow, we affirm in part, reverse in part, and remand for a new trial.

{¶ 2} In August 2010, Roseberry was charged with one count each of aggravated burglary and kidnapping, each containing firearm and forfeiture specifications; one count of having weapons while under disability, with a forfeiture specification; and one count each of burglary, theft, and receiving stolen property. Roseberry waived his right to a jury trial and the case was tried to the court.

{¶ 3} The victim, Danielle Adams ("Adams"), testified that Roseberry was her ex-boyfriend, and that when they were dating, he stayed at her residence every night, kept personal belongings there, and had a house key. In the spring of 2010, they ended their relationship, but Roseberry still visited Adams at her home even though she had taken her key back from him.

{¶ 4} During the late hours of July 24 and early morning hours of July 25, while she was at work, Adams exchanged text messages with Roseberry. Over objection, Adams read out loud on direct examination her handwritten transcription of the exchanged text messages. Adams testified the exchange between her and Roseberry was as follows:

{¶ 5} "Roseberry: Man u did smething ill brak da window.

**{¶ 6}** "* *

**{¶ 7}** "Adams: Wht?

**{¶ 8}** "Roseberry: I dnt wnt to brake nothing to get n and u blocked da door so I cant get n

**{¶ 9}** "* *

**{¶ 10}** "Adams:   So you got my key huh

**{¶ 11}** "* *

**{¶ 12}** "Roseberry:   OK can u un block da door I dnt have no where to go

**{¶ 13}** "Adams:   Y u say u didn't have the key

**{¶ 14}** "Roseberry:   Cuz who wnt ti be left n da streets

**{¶ 15}** "Roseberry:   Man pease dnt make me do smething I dnt wnt please open dat door

**{¶ 16}** "Roseberry:   Man ima get n

**{¶ 17}** "Adams:   I hope u aint breakin no window

**{¶ 18}** "Adams:   Im at work go wit your best friend, he always got ur bck remember

**{¶ 19}** "Roseberry:   I neva said that im tryna get away I don't wnt to do sht stupid so please let me n

**{¶ 20}** "Adams: I said i'm at work

**{¶ 21}** "Roseberry: Ok how do i get in"

{¶ 22} Around noon on July 25, after receiving a call from her neighbor, Adams left work. When she arrived at her home, she saw that her front window was broken and she contacted the police. When the police arrived, Adams discovered that two televisions, two DVD players, a gaming system, and a window air conditioner had been stolen from her residence. Although she could not assess the value of the televisions, DVD players, or air conditioner, Adams testified that the value of the gaming system was $200.

{¶ 23} Later on the evening of July 25, Roseberry used a key to gain access to Adams's home. Adams testified that she did not give Roseberry permission to use the key or enter her residence. According to Adams, when Roseberry entered her residence, he was holding a silver gun in his hand.

{¶ 24} After a period of time, Adams drove Roseberry to get something to eat. Adams testified that she went with him because he had a gun, but she could not recall if he took the gun with him when they left the residence. About 15 minutes later, when they returned back to her residence, Adams sent a text message to her neighbor, telling him Roseberry was in her home with a gun.

{¶ 25} An East Cleveland police officer contacted Adams and she discreetly informed the officer that Roseberry had a gun. The police arrived approximately five minutes later. According to Adams, when Roseberry realized the police were outside the residence, he walked toward the back of the house. When he returned to the living room,

he no longer had the gun in his hand. Roseberry then voluntarily exited the front door of the residence, was detained, and arrested.

{¶ 26} Officer Steve Kaleal testified that he responded to the breaking and entering call at approximately 12:40 p.m. on July 25. When he and his partner arrived at the residence, he observed that a front window had been pushed out. After taking an inventory of the property missing from the residence, he interviewed neighbors. Based on a conversation with the next-door neighbor, Roseberry was a named suspect.

{¶ 27} Officer Robert Bailey testified that he responded to Adams's address on July 25 at 10:00 p.m. for a possible hostage situation. After Roseberry was detained, Officer Bailey entered the residence, spoke with Adams regarding the weapon involved, and located a silver handgun in the toilet reservoir of the first floor bathroom.

{¶ 28} Lieutenant Matthew Balli testified that he made the initial contact with Adams and confirmed that she was being held at gunpoint by Roseberry. He testified that once the weapon was found, he ran the firearm's serial numbers through the National Crime Information System and the Law Enforcement Automatic Data System and learned that the firearm had been reported stolen out of the city of Strongsville.

{¶ 29} Michael Shymske testified that he was the owner of the firearm that was recovered but that he had reported it stolen by an acquaintance in 2008. He testified that he did not know Roseberry and did not give Roseberry permission to possess or use the firearm.

{¶ 30} The State's final witness was Detective Michael Delisle, who testified that he conducted an interview with Adams during which she provided him with a written statement. Included with the written statement was a handwritten compilation of the text messages Adams and Roseberry exchanged on July 24 and 25. Detective Delisle testified that he viewed Adams's cell phone and took a series of photographs of the phone that captured the text messages Adams indicated that she exchanged with Roseberry. Detective Delisle said he took the photographs because he knew certain cell phone companies only saved text messages for a limited period of time. The trial court, over objection, received the photographs of the text messages into evidence as State's exhibits 4-14. The photographs of the text messages included the content that Adams previously testified to and read out loud in her direct testimony (State's exhibits 4-10) and additional text messages (State's exhibits 11-14) that had the following content:

{¶ 31} "Did u break my window yet crazy

{¶ 32} "Not yet

{¶ 33} "U better not

{¶ 34} "How do I get n

{¶ 35} "Idk

{¶ 36} "Yea u do

{¶ 37} "Wht time do u get off

{¶ 38} "I think 7

{¶ 39} "Man I hpe I dnt go to jail

**{¶ 40}** "Jail 4 wht

**{¶ 41}** "Doin smething dumb"

**{¶ 42}** At the close of testimony and evidence, the trial court found Roseberry not guilty of Count 1 — aggravated burglary, Count 2 — kidnapping, and Count 4 — burglary, but guilty of the lesser-included charge of breaking and entering, Count 3 — having weapons under disability, including the forfeiture specification, Count 6 — receiving stolen property, and Count 7 — an amended count of misdemeanor theft. Roseberry was sentenced to an aggregate term of two years in prison. He appeals, raising three assignments of error, which will be addressed out of order.

## Sufficiency of the Evidence

**{¶ 43}** In his first assignment of error, Roseberry contends that his convictions are not supported by sufficient evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, Cuyahoga App. No. 92266, 2009-Ohio-3598, ¶12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime(s) proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The Supreme Court of Ohio has held that when reviewing the sufficiency of the evidence, an appellate court is to consider all of the evidence admitted at trial, even if the evidence was improperly admitted. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶19.

{¶ 44} Roseberry was found not guilty of burglary, but guilty of the lesser-included charge of breaking and entering in violation of R.C. 2911.13. This section provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * * or any felony," and "No person shall trespass on the land or premises of another, with purpose to commit a felony."

{¶ 45} The offense of breaking and entering requires that a defendant have the specific intent of trespassing with the purpose to commit a felony. See *State v. Copeland* (Jan. 18, 2002), Montgomery App. No. 18711. The purpose to commit a felony may be proved by direct or circumstantial evidence. Furthermore, it is not necessary that the purpose to commit a felony be formed before or at the time the initial trespass or entry is achieved. *State v. Bowling* (Aug. 12, 1985), Clermont App. No. CA85-01-001, citing *State v. Jones* (1981), 2 Ohio App.3d 20, 440 N.E.2d 580 (the "purpose to commit a felony" element in R.C. 2911.13(B) may be formed while the trespass is in progress, and the plan need not be formulated prior to the trespass).

{¶ 46} It is well established that "'circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶75, quoting *State v. Heinish* (1990), 50 Ohio St.3d 231, 238, 553 N.E.2d 1026. Circumstantial evidence carries the same weight as direct evidence. *Jenks*. Circumstantial evidence is proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that

naturally or logically follow.  *State v. Beynum* (May 23, 1996), Cuyahoga App. No. 69206.

{¶ 47} From the facts of this case, it can be inferred that Roseberry's purpose in trespassing on Adams's residence was to commit a theft offense or a felony. Circumstantial evidence was presented that Roseberry forcefully trespassed on the premises by breaking Adams's window to gain entrance into the residence.  In *State v. Flowers* (1984), 16 Ohio App.3d 313, 315, 475 N.E.2d 790, the court stated that "there is a reasonable inference that one who forcibly enters a dwelling * * * does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference."  In this case, it is reasonable when, viewing the evidence in the light most favorable to the prosecution, to infer that Roseberry's purpose, either prior to or during the commission of breaking into Adams's residence, was to commit a theft offense.  The text messages established that Roseberry threatened to break Adams's window, wanted to get inside her residence, and was concerned that he was going to go to jail for doing something "dumb."

{¶ 48} The text messages circumstantially prove that Roseberry gained entrance into the house and an inference can be made that he subsequently removed the property. Moreover, Officer Kaleal testified that after speaking with Adams's neighbor, Roseberry was named a suspect.

{¶ 49} Viewing the evidence, whether properly admitted or not, in the light most favorable to the prosecution, sufficient evidence was presented supporting Roseberry's conviction for breaking and entering.

{¶ 50} Additionally, we find sufficient evidence was presented to support Roseberry's conviction for theft. Pursuant to R.C. 2913.02(A)(1), regarding theft, "[n]o person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * property * * * [w]ithout the consent of the owner or person authorized to give consent."

{¶ 51} Adams testified that when she left for work, the property that was subsequently removed was in her residence. When she returned home, the window was broken and the property was missing. Officer Kaleal testified that he and his partner responded to Adams's residence and observed that her front window was pushed out. As part of his investigation, he spoke to neighbors to see if anyone had observed anything. After interviewing the next-door neighbor, Roseberry became a suspect.

{¶ 52} This information obtained by Officer Kaleal, coupled with the text messages exchanged between Adams and Roseberry, provides enough circumstantial evidence to create an inference that Roseberry committed a theft offense inside Adams's residence. Accordingly, sufficient evidence was presented going to all the elements of the theft offense.

{¶ 53} Roseberry was also convicted of having weapons while under disability, in violation of R.C. 2923.13(A)(3). This section provides in pertinent part: "[U]nless

relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *."

{¶ 54} In this case, Roseberry stipulated to a 2010 drug trafficking conviction. Adams testified that Roseberry entered her apartment carrying a silver gun in his hand. When the police arrived at her residence, Adams observed Roseberry walk toward the back of the residence with the gun, and when he returned to the living room, he did not have the gun. Officer Bailey found a silver handgun in the toilet reservoir of the first floor bathroom. The gun recovered was admitted into evidence and Adams testified she thought it was the gun Roseberry had — the gun was the same size and color. Adams also testified that she did not own the gun that was found in her home. This evidence was sufficient to establish that Roseberry had the firearm in violation of R.C. 2923.13(A)(3).

{¶ 55} Roseberry was also convicted of receiving stolen property in violation of R.C. 2913.51, which provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶ 56} In this case, sufficient evidence demonstrated that Roseberry received or retained the firearm and had reasonable cause to believe the firearm was obtained through a theft offense. Lieutenant Balli testified that the gun found in Adams's residence was

reported stolen in 2008 by Michael Shymske. Although Roseberry had no involvement with the theft of Shymske's gun, his conviction is supported by sufficient evidence because Roseberry's previous drug conviction prevented him from legally purchasing or obtaining a gun and therefore he would have reasonable cause to believe that the gun he possessed was stolen.

{¶ 57} Accordingly, Roseberry's first assignment of error is overruled.

<u>Evid.R. 803(5) and 901:   Text Messages and Photographs</u>

{¶ 58} In his third assignment of error, Roseberry argues that the trial court erred by allowing testimony and admitting and receiving evidence of the alleged text messages between Adams and himself.

{¶ 59} Evidentiary rulings made at trial rest within the sound discretion of the trial court. *State v. Lundy* (1987), 41 Ohio App.3d 163, 535 N.E.2d 664; *State v. Graham* (1979), 58 Ohio St.2d 350, 390 N.E.2d 805. "The term 'abuse of discretion' connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Nielson v. Meeker* (1996), 112 Ohio App.3d 448, 679 N.E.2d 28.

{¶ 60} Roseberry first contends that the trial court abused its discretion in allowing Adams to read her handwritten transcription of the text messages out loud in open court on direct examination. The State argues that the trial court's ruling was proper pursuant to Evid.R. 803(5), but recognizes that the handwritten transcription could not be received as an exhibit into evidence.

{¶ 61} Under Evid.R. 803(5) regarding hearsay exceptions, a recorded recollection is "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

{¶ 62} In order to admit a statement into evidence pursuant to Evid.R. 803(5), "a party must establish:  (1) the witness has a lack of present recollection of the recorded matter; (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory; (3) the recorded recollection was made or adopted by the witness; and (4) the recorded recollection correctly reflects the prior knowledge of the witness." *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 300, 640 N.E.2d 863.

{¶ 63} In this case, Adams testified that when she went to the police station, she took her cell phone and wrote down the text messages exchanged between her and Roseberry the night of July 24 through July 25.  On direct examination, Adams stated she could not recall the exact content of the messages she received, but when she wrote down the text messages, her recollection of the content of the text messages was fresh in her mind.  When presented with the handwritten list, Adams also positively identified it as her transcribed compilation of the text messages exchanged between her and Roseberry. She testified that she knew the text messages were coming from Roseberry's phone

because she knew his cell number at the time, although she admitted she currently could not recall the number. Accordingly, the trial court did not abuse its discretion by allowing Adams to read the series of text messages out loud pursuant to Evid.R. 803(5), and the trial court's exclusion of the handwritten compilation as an exhibit was proper.

{¶ 64} Roseberry also contends that the trial court abused its discretion in allowing Adams to read the handwritten list of compiled text messages because the list was not properly authenticated.

{¶ 65} Under Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." This rule invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what its proponent claims it to be. *State v. Craycraft*, Clermont App. Nos. CA2009-02-013 and CA2009-02-014, 2010-Ohio-596, ¶35. This standard is less demanding than preponderance of the evidence. Id., citing *State v. Winfield* (Feb. 7, 1991), Ross App. No. 1641. The proponent must only demonstrate a "reasonable likelihood" that the evidence is authentic, which may be supplied by the testimony of a witness with knowledge. Evid.R. 901(B); *State v. Bell*, Clermont App. No. CA2008-05-044, 2009-Ohio-2335, ¶30.

{¶ 66} We find that the handwritten list was properly authenticated by Adams because she was the person who created the list and she testified that the list was, in fact, her handwritten list of the text messages exchanged between Roseberry and herself.

{¶ 67} Roseberry's final challenge to the text messages is that the trial court abused its discretion in (1) allowing Detective Delisle to testify regarding the photographs he took of Adams's cell phone, and (2) ultimately admitting and receiving the photographs and their written content into evidence. The State argues that the photographs were properly admitted and received into evidence as photographs and were properly authenticated under Evid.R. 901.

{¶ 68} Again, evidence is properly authenticated under Evid.R. 901 when the evidence is sufficient to support a finding that the matter in question is what the proponent claims it to be. Evid.R. 901(A); *Craycraft.* For photographs, a witness with personal knowledge of the subject of the photographs may authenticate them by testifying that the photographs fairly and accurately depict the subject at the time they were taken. *State v. Hannah* (1978), 54 Ohio St.2d 84, 88, 374 N.E.2d 1359.

{¶ 69} In this case, Detective Delisle testified that he viewed Adams's cell phone and text messages and took photographs of those text messages. At trial, when the prosecutor showed him the photographs, State's exhibits 4-14, Detective Delisle agreed that the photographs appeared "to be a fair and accurate copy of the text messages from Miss Adams'[s] phone on the date that [he] took those photos." Accordingly, we find that the photographs were properly authenticated by Detective Delisle.

{¶ 70} However, we find that the trial court abused its discretion in admitting the photographs of the text messages that Adams did not testify to, i.e., State's exhibits 11-14, because the content contained in the photographs is inadmissible hearsay.

**{¶ 71}** Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A statement can be a written assertion. Evid.R. 801(A). Statements made outside of the courtroom, offered at trial to prove the truth of what they assert, are generally inadmissible as hearsay unless an exception applies. Evid.R. 801(C); Evid.R. 802; *State v. DeMarco* (1987), 31 Ohio St.3d 191, 195, 509 N.E.2d 1256.

**{¶ 72}** In this case, the photographs contained out-of-court written statements. The State was not using the photographs to show that Adams had a cell phone that received text messages, but to show the written content of the text messages allegedly exchanged between Adams and Roseberry to prove that Roseberry committed the offenses of breaking and entering and theft.

**{¶ 73}** The photographs, State's exhibits 4-14, showed the content of the text messages between Adams and Roseberry. Adams testified and recited the content of the text messages contained in exhibits 4-10, identifying which text messages she sent and which were sent by Roseberry. Therefore, the text messages sent by Roseberry rendered the content of conversation not hearsay pursuant to Evid.R. 801(D)(2), which provides that statements that are offered against a party and are the party's own statements are not hearsay. Therefore, Roseberry's statements in the text messages that Adams testified to were admissible as admissions by a party-opponent under Evid.R. 801(D)(2)(a). Accordingly, State's exhibits 4-10, the photographs containing content of what Adams previously testified to, were properly authenticated and not hearsay; thus admissible.

{¶ 74} However, the content of the text messages contained in exhibits 11-14 are hearsay because they contain out-of-court statements used to prove the truth of the matter asserted, specifically that Roseberry committed the acts of breaking and entering and theft. Unlike the photographs that contained the content that Adams previously testified to, Detective Delisle did not have knowledge of the content of the text messages. He did not testify that he knew Roseberry's cell phone or that he could determine from the cell phone which messages were sent or received and by whom. The only method of identifying the "speakers" and deciphering the content of those text messages was through what Adams told Detective Delisle because nothing within the text messages independently indicated the senders or speakers of the text messages. Therefore, the hearsay exception under Evid.R. 801(D)(2)(a) cannot be used for these exhibits to be received into evidence. Accordingly, we find that the trial court abused its discretion in receiving these photographs of the text messages, State's exhibits 11-14, into evidence through Detective Delisle's testimony alone.

{¶ 75} We note that in most cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages. See *Bell* and *Craycraft.* Thus, the State could have properly admitted the photographs through Adams's testimony because she was the recipient of the text messages, had personal knowledge of the content, and could identity of the sender of the messages.

{¶ 76} We also find that the admission of these exhibits was not harmless error and contributed to Roseberry's conviction for breaking and entering and theft. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 358 N.E.2d 623. A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *State v. Williams* (1983), 6 Ohio St.3d 281, 290, 452 N.E.2d 1323. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61, 605 N.E.2d 46.

{¶ 77} In this case, the State needed to prove that Roseberry forcefully trespassed on Adams's property to commit a theft offense or felony and that he subsequently committed an act of theft. Reviewing all the testimony given at trial and the content of text messages sent, the content in State's exhibits 11-14 was necessary to establish the State's case. Within those exhibits, the following texts were exchanged:

{¶ 78} "Did u break my window yet crazy

{¶ 79} "Not yet

{¶ 80} "U better not

{¶ 81} "How do I get n

**{¶ 82}** "Idk

**{¶ 83}** "Yea u do

**{¶ 84}** "Wht time do u get off

**{¶ 85}** "I think 7

**{¶ 86}** "Man I hpe I dnt go to jail

**{¶ 87}** "Jail 4 wht

**{¶ 88}** "Doin smething dumb"

**{¶ 89}** Prior to the admission of the text message photographs, Adams's testimony established only that Roseberry threatened to break her window to gain entrance, but did not prove beyond a reasonable doubt that his purpose for breaking the window was to take any property or commit any felony offense, and no evidence was presented linking him to the removal of Adams's property. From Adams's testimony, an inference could be drawn that Roseberry's purpose in breaking the window was merely to find a place to stay ("OK can u un block da door I dnt have no where to go," "Cuz who wnt ti be left n da streets"). The subsequent inadmissible text messages established that Roseberry was going to break the window ("Not yet") and was concerned about going to jail ("Man I hpe I dnt go to jail" [for] "Doin smething dumb").

**{¶ 90}** Moreover, Adams's testimony alone does not establish that Roseberry took the property from her residence. It cannot be inferred that Roseberry was the person who removed the items from Adams's residence merely because he threatened to break the window. It is the subsequent inadmissible text messages that create the inference that he

was going to break the window and was concerned about going to jail for doing something "dumb."

{¶ 91} We cannot say that the trial court's decision in receiving the inadmissible text messages was harmless beyond a reasonable doubt or that absent the inadmissable text messages, the remaining evidence constitutes overwhelming proof of Roseberry's guilt supporting his convictions for breaking and entering and theft.   Therefore, the error was not harmless, but prejudicial and it deprived Roseberry of a fair trial.   Thus, we find that the trial court abused its discretion in receiving State's exhibits 11-14 into evidence.

{¶ 92} Accordingly, we find that the trial court did not abuse its discretion in allowing Adams to read her handwritten compilation of text messages under Evid.R. 803(5) or in receiving State's exhibits 4-10 into evidence.   However, we find that State's exhibits 11-14 were improperly admitted and the error deprived Roseberry of a fair trial on the breaking and entering and theft charges; thus, a new trial on those charges is warranted.   Roseberry's third assignment of error is sustained in part and overruled in part.

### Manifest Weight of the Evidence

{¶ 93} In his second assignment of error, Roseberry argues that his convictions are against the manifest weight of the evidence.   Having concluded that Roseberry was deprived of a fair trial regarding his convictions for breaking and entering and theft, thus warranting a new trial, we will only address this assignment of error as it pertains to his convictions for having weapons while under disability and receiving stolen property.

{¶ 94} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717..

{¶ 95} Based on the record before us, the trial judge did not lose his way in convicting Roseberry for having weapons while under disability and receiving stolen property. The weight of the evidence demonstrated that Roseberry had a firearm in his possession on the evening of July 25. Adams testified that when Roseberry realized the police were at her residence, he walked to the back of the house. The officers searched the house and recovered a stolen firearm from the toilet reservoir, which Adams identified as the gun Roseberry had in his possession when he entered her residence. Furthermore, the legal owner of the firearm testified that he did not give Roseberry permission to use or possess his firearm, which was stolen in 2008. Because Roseberry had been previously convicted of a drug offense, he could not obtain a firearm legally; therefore, he had reasonable cause to believe the firearm was stolen.

{¶ 96} Accordingly, Roseberry's remaining convictions are not against the manifest weight of the evidence. His second assignment of error is overruled.

**{¶ 97}** Judgment is affirmed in part, reversed in part, and remanded for a new trial on the breaking and entering and theft charges.

Judgment affirmed in part

and reversed in part,

and cause remanded.

S. GALLAGHER, P.J., and E. GALLAGHER, J., concur.