[Cite as *State v. Horton*, 2015-Ohio-99.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101100**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CHARLES W. HORTON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART AND REVERSED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573726-A

**BEFORE:** McCormack, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44115


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Lakesha M. Johnson
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Charles Horton ("Horton"), appeals from his convictions of assaulting a police officer and assaulting a corrections officer. Horton claims the video that captured the assault incident was altered but could not substantiate his claim. After a review of the record and applicable law, we affirm his conviction. We, however, reverse the trial court's imposition of court costs and remand the matter to allow Horton an opportunity to request a waiver of costs.

## Substantive Facts and Procedural History

{¶2} Horton was pulled over and stopped by a police officer for making an illegal U-turn. The officer suspected that Horton was driving under the influence. Horton refused to exit his vehicle for a field sobriety test and resisted while the police removed him from his vehicle. Horton was then placed under arrest and transported to the county jail. While there, as shown in the jail's surveillance video, Horton became highly agitated and threw his jacket at an officer. Several officers rushed in to restrain him, and he struck one of the officers. He later kicked a corrections officer. From the incident, Horton was charged with assaulting a police officer, a felony of the fourth degree, and assaulting a corrections officer, a felony of the fifth degree.

{¶3} Horton was tried to the bench, representing himself with a standby counsel. The state presented the testimony of two officers and a detective. During their testimony, a surveillance video taken at the jail's processing area was played for the court. Horton testified on his own behalf. He claimed the video had been altered, but also claimed his act was defensive.

**{¶4}** After trial, Horton was found guilty of both counts. The court sentenced him to one-and-a-half years of community control. Horton now appeals, raising three assignments of error. We address the second assignment of error first.

## Manifest Weight of the Evidence

**{¶5}** In the second assignment of error, Horton claims his convictions are against the manifest weight of the evidence. A manifest-weight claim questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When a defendant asserts that his conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
>
> The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id*. at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In evaluating a manifest-weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶6}** At trial, Officer Aaron Petitt, Officer Justin Davis, and Detective Leroy Gilbert testified to the following event. On April 13, 2013, Officer Sanderson stopped Horton's vehicle for an illegal U-turn. The officer smelled alcohol emanating from Horton's breath and ordered him to exit the vehicle for a field sobriety test. Horton refused. Officer Sanderson then

radioed for backup and another officer arrived. Because Horton refused to cooperate, the two officers had to forcibly remove Horton from his vehicle.

{¶7} Officers Petitt and Davis also arrived at the scene. The two transported Horton in their patrol vehicle to the county jail. Horton was uncooperative while in the backseat of the patrol vehicle. The officers had to force him to sit up. At the booking area, Horton was asked to remove his jacket, belt, shoelaces, and other personal belongings. He became agitated and combative. After he removed his necklace, he threw his jacket at Officer Davis, who was standing behind a counter. The jacket hit the officer's face. Officer Petitt, who was nearby, rushed in to restrain Horton. According to Officer Petitt, Horton cocked back and struck him in his face with a closed fist as Petitt approached him. Officer Petitt testified as follows:

> As he was being booked in, my partner, Officer Davis, was on the opposite side of the booking counter as I was, and I was standing a few feet away from Mr. Horton. We were trying to keep him calm. As he was getting more and more agitated, he was yelling and screaming, he then took his jacket and threw it at Officer Davis on the other side of the booking counter. And then when I stepped closer to detain him to stop him from attacking anyone else, he turned towards me and struck me in the face with a closed fist.

{¶8} Officer Petitt used a "takedown" — wrapping his arms around Horton — to bring Horton to the ground, and several other officers also rushed in to subdue him. While on the ground, Horton continued to resist; as the officers placed handcuffs on him, he kicked and flailed around. After he was secured on the ground, a corrections officer searched him. When the corrections officer asked Horton to remove his boots, Horton kicked backwards at the corrections officer. He was brought down to the ground again.

{¶9}   Officer Davis testified similarly regarding the incident.  He, standing behind a counter, explained to Horton the booking procedures and asked Horton to remove his jacket and other personal items.   Horton became agitated and repeatedly yelled "now you want to be nice to a minority."   Horton then threw his jacket across the counter at Officer Davis.   When Officer Petitt stepped in to restrain him, Horton punched Officer Petitt in the face.   Horton was then taken to the ground.   Later, when Horton was asked to remove his boots by a corrections officer, Horton "flung" his boot off.

{¶10} While the two officers testified, a video of the incident taken by the surveillance cameras was played.   Detective Leroy Gilbert testified that he ordered the video from the county jail.   The video was first sent to Detective Gilbert's email account.   After viewing it, Detective Gilbert forwarded it to the email account of the prosecutor's office.

{¶11} Horton, employed as a contractor for IT services, maintained that the video had been altered and it did not reflect what actually occurred.   He testified on his own behalf and gave a very different account of both the traffic stop and the incident that took place in the processing area.

{¶12} Horton testified that he was driving home from a friend's house around 2 a.m. when he encountered a construction barricade and made a U-turn.   After being pulled over, he provided Officer Sanderson his license and insurance information and denied having consumed alcohol.   When asked to exit his vehicle, after some initial hesitation, he did so voluntarily. After he exited his vehicle, he stood facing his vehicle.   Officer Sanderson held his left hand and Officer Petitt held his right hand, and the two began hitting him in the head.   Officer Petitt also did a maneuver, which Horton described as "noogie," to Horton's eardrum.   Horton also

alleged that when he refused to sit up in the backseat of the officers' patrol vehicle, Officer Petitt did the same maneuver to his eardrum.

{¶13} Horton's testimony regarding what occurred after he arrived at the jail's processing area was also drastically different from the officers' account. The event at the precessing area, however, was captured in the surveillance video, and the video corroborated the officers' account.

{¶14} Horton admitted throwing the jacket, but offered a very different account of what occurred after he threw his jacket, very much at odds with what was depicted in the video. He testified as follows:

> After I threw the jacket, [Officer Sanderson] pointed to the holding cell and told me to stand against the holding cell, which I did. I stood there for a moment and I witnessed the interaction between what I could best describe as mostly Caucasian officers and mostly male and female correctional officers who were behind the table, which does not appear on the video.
>
> After I observed that interaction for some time, I looked directly at one of the correction officers who I can describe as a tall gentleman, African-American, with a thick beard * * * and I can recall looking directly at him making a statement. Now they want to act nice around minorities.
>
> At that point, Officer Sanderson from the left approached me and Officer Petitt, I believe, from the right, approached me as I was standing against the holding cell. Officer Sanderson instructed me to remove my belt and shoestrings. I said no, because I felt that he was too close and I could not bend down without touching him, or I could not do it without moving out of his way. And also — immediately after Officer Sanderson said remove your shoestrings and belt, I turned to Officer Petitt and made the statement that, something to the effect of, you did not have to hit me in my head like that. You didn't have to do that. And Officer Sanderson again repeated, take off your shoestrings and belt. I said no again, and that's when Officer Sanderson with his left hand choked me and took me to the ground.

{¶15} According to Horton, he was then taken to a room for a Breathalyzer test, which he refused to take. After he came out of the Breathalyzer room, a corrections officer patted him

down and told him to remove his boots.   Horton testified that the officer tripped him as he tried to kick off his right boot.

{¶16} On cross-examination, Horton was confronted with the inconsistency between the sequence of the events he testified to and what was depicted in the video.   When asked about the part of the video showing him striking Officer Petitt, who stepped in to subdue him immediately after he threw his jacket, Horton claimed the video had been altered and insisted on his version of the event.   Horton, however, did not offer any testimony or evidence regarding how the video was altered, or by whom.   The trial court was clearly puzzled by Horton's insistence on his account of the incident.   It was inconsistent with what the video depicted, and Horton provided nothing to substantiate his claim of alteration.   Furthermore, although Horton claimed the video did not depict what really occurred, he simultaneously maintained his act of striking Officer Petitt was a defense mechanism to protect his body when the officers converged on him.   These two theories appear to be inconsistent.   After its examination of the video, the trial court found the officers' testimony credible and found Horton guilty of the charges.

{¶17} Reviewing the entire record, including the video, and deferring to the trier of fact its credibility assessment, we are unable to conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that a new trial is warranted.   The second assignment of error is without merit.

### Admissibility of the Videotape

{¶18} In the first assignment of error, Horton claims the trial court erred by allowing the jail booking videotape to be admitted into evidence without proper authentication.

{¶19} Evid.R. 901 provides:   "The requirement of authentication and identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding of that

the matter in question is what its proponent claims." The "threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 65, citing *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991). The state only needs to demonstrate a "reasonable likelihood" that the evidence is authentic. *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 65 (8th Dist.).

**{¶20}** Whether a piece of evidence has been properly authenticated is reviewed under an abuse-of-discretion standard. *State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 27, citing *State v. Barton*, 12th Dist. Warren No. CA2005-03-036, 2007-Ohio-1099, ¶ 80.

**{¶21}** Photographic and video evidence can be authenticated in two ways. Pertinent to this case, the video evidence may be authenticated under what is referred to as the "pictorial testimony" theory. Under this theory, "'the photographic evidence is merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.'" *State v. Pickens*, Slip Opinion No. 2014-Ohio-5445, ¶ 150, quoting *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aeor. & Agric. Implement Workers, Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991).

**{¶22}** Here, Officer Petitt testified there were numerous cameras at the county jail's processing area. His testimony regarding how the incident unfolded was accompanied by a playing of the video taken by the cameras from the area. He affirmed that the video shown was a "fair and accurate depiction of" the incident. Thus, Officer Petitt, who had personal knowledge of the event captured in the video, properly authenticated the video evidence under the "pictorial testimony" theory. Detective Gilbert provided additional authentication

testimony. He testified that, as part of his investigation of the assault incidence, he personally ordered the videotape from the jail, and forwarded it to the prosecutor's office. He testified the video played in court was the video he received and he did nothing to alter the video.

**{¶23}** Horton alleged the video was not authentic, but presented no evidence whatsoever to substantiate his claim. Upon this record, we find no abuse of discretion by the trial court in admitting the video into evidence. The first assignment of error is without merit.

**{¶24}** Under the third assignment of error, Horton contends the trial court erred in ordering him to pay court costs in the journal entry even though the court did not impose costs at sentencing. The state concedes the error. Pursuant to *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 23, the proper remedy for the court's error is to remand the case to afford the defendant an opportunity to seek a waiver of court costs. *See also State v. Grant*, 8th Dist. Cuyahoga No. 100497, 2014-Ohio-2656, ¶ 16. The third assignment of error is sustained.

**{¶25}** Appellant's conviction is affirmed. The imposition of costs is reversed, and the matter is remanded to the trial court for the limited purpose of allowing appellant to move the court for a waiver of costs.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR