[Cite as *State v. Williams*, 2021-Ohio-797.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 CA 00050 |
| JUSTIN WILLIAMS | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:      Appeal from the Fairfield County Court of
                               Common Pleas, Case No. 2017 CR 0697

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        March 12, 2021

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

R. KYLE WITT                           JAMES A. ANZELMO
Fairfield County Prosecutor            Anzelmo Law
                                       446 Howland Drive
CHRISTOPHER A. REAMER                  Gahanna, Ohio  43230
Assistant Fairfield County Prosecutor
239 West Main Street, Suite #101
Lancaster, Ohio  43130

*Hoffman, J.*

{¶1} Defendant-appellant Justin Williams appeals the judgment entered by the Fairfield County Common Pleas Court convicting him of two counts of unlawful sexual conduct with a minor (R.C. 2907.04(A), (B)(3)) and sentencing him to an aggregate term of incarceration of 48 months. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On the night of June 8, 2016, Appellant contacted C.H. through Facebook Messenger, referring to her as "boo" and "sweetheart." C.H. was fifteen years old at the time, and Appellant was twenty-six years old. Appellant previously dated C.H.'s older sister, Chandra. During the time he dated Chandra, Appellant was 23 years old, while Chandra was 18 years old. While dating Chandra, Appellant was around the family and attended birthday parties for Chandra's younger siblings.

{¶3} On June 9, 2016, Appellant drove to C.H.'s home to give her a ride to a friend's house. While parked outside, he messaged C.H. concerning her need to hurry up because he had to get gas, and asked why her brother came out of the house. He urged her to come out of the house, stating, "Don't do that you better stop acting like that babe you hurt my feelings I waited up all night for you." State's Exhibit 1A.

{¶4} After C.H. got in Appellant's car, he went to a gas station, and then drove to a storage unit he rented. In the unit, C.H. saw a mattress on the floor, a box fan, and a large screen television. Appellant took off his clothes. He kissed C.H., giving her a hickey. C.H. asked Appellant to stop. He pulled C.H.'s clothes off and engaged in vaginal intercourse with her. He did not ejaculate. C.H. rolled over on the mattress, and Appellant engaged in anal intercourse with her. C.H. told Appellant the anal intercourse hurt her.

{¶5} C.H.'s stepmother Lorena was working at her job in a gas station when one of her daughters came to the store to tell her C.H. left home in a car with Appellant. C.H. was not permitted to leave the home without permission, and had previously run away to spend the night with her natural mother, who had only supervised visitation rights. Lorena called the police. A friend found C.H., and brought her to the gas station where Lorena was working. Lorena called the police to report C.H. had been found. Lorena noticed C.H. was walking differently and had a hickey on her neck. C.H.'s clothes were disheveled and she was crying. When Lorena asked if C.H. and Appellant had sex, C.H. responded affirmatively. C.H. said she told him no, but they did it anyway.

{¶6} C.H. was examined at Nationwide Children's Hospital. A nurse noted an acute injury to C.H.'s hymen, which was bruised and bleeding. The nurse believed the injury to have occurred within 72 hours prior to the exam. DNA swabs were taken.

{¶7} Traditional DNA testing did not show male DNA present on the perianal and vaginal swabs, but further Y-STR DNA testing showed the presence of male DNA. The DNA on the perianal swab was insufficient to include anyone, but the profile did not exclude Appellant. The DNA on the vaginal swab did include Appellant's DNA profile, and approximately 150 unrelated males would need to be tested before seeing a similar profile. Traditional DNA testing was performed on the swab taken from the hickey on C.H.'s neck. Appellant was included in this DNA at a frequency of one in one trillion unrelated individuals.

{¶8} Appellant was indicted by the Fairfield County Grand Jury with two counts of unlawful sexual conduct with a minor and two counts of sexual battery. Prior to trial,

the State dismissed the counts of sexual battery. The case proceeded to jury trial on the charges of unlawful sexual conduct with a minor.

{¶9} Appellant testified at trial. He testified he did not message C.H. on Facebook, and the messages admitted into evidence were not sent by him. He testified C.H. called him three times asking for a ride to a friend's house. He did not find this unusual, as he and Chandra sometimes gave rides to her siblings. He testified he picked C.H. up at her house, got gas in his car, and dropped her off near the Dollar General store. He testified he did not take her to his storage unit, and did not have sex with her.

{¶10} Appellant was convicted of both charges and sentenced to 48 months incarceration on each charge, to be served concurrently. It is from the October 15, 2019 judgment of the Fairfield County Common Pleas Court Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING INTO EVIDENCE UNAUTHENTICATED MESSAGES THROUGH A SOCIAL MEDIA ACCOUNT, IN VIOLATION OF WILLIAMS' RIGHTS TO A FAIR TRIAL AND DUE PROCESS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE INADMISSIBLE OUT OF COURT STATEMENT, IN VIOLATION OF WILLIAMS' RIGHTS TO CONFRONTATION, TO A FAIR TRIAL AND TO

DUE PROCESS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

III. WILLIAMS' CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

IV. WILLIAMS'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

V. THE TRIAL COURT PLAINLY ERRED BY FAILING TO MERGE WILLIAMS' OFFENSES.

VI. WILLIAMS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

I.

**{¶11}** In his first assignment of error, Appellant argues the trial court erred in admitting into evidence the messages he purportedly sent C.H. through Facebook Messenger because the messages were not properly authenticated.

**{¶12}** "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶13}** Evid. R. 901 governs authentication and provides in pertinent part:

**(A) General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(B) Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

**{¶14}** The purpose behind authentication is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. *State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 35 (7th Dist. Mahoning). The ultimate decision on the weight to be given to the piece of evidence is left to the trier of fact. *Id.* " '[A] letter may be authenticated by evidence of its distinctive contents such as facts contained in the missive that only the writer may know.' " *Id.* at ¶ 39, *citing State v. Chamberlain*, 8th Dist. Cuyahoga No. 58949, 1991 WL 144181, (July 25, 1991). "[I]in most cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages." *State v. Norris*, 2nd Dist. Clark No. 2015-CA-22, 2016-Ohio-5729, 76 N.E.3d 405, ¶ 34, *quoting State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, at ¶ 75.

**{¶15}** In the instant case, C.H.'s stepmother, who provided screen shots of the Facebook messages to police, identified the printout of the messages from Facebook Messenger, testifying, "They're all messages from Justin.  That's his Facebook account." Tr. 130.   Likewise, C.H. identified the messages as coming from Appellant.  Tr. 434.

**{¶16}** Further, Appellant's own testimony aided in authentication of the messages, even while he denied sending the messages.  The picture associated with the person sending the messages was of a motorcycle of a style Appellant admitted he previously owned.  The writer of the messages describes the recipient's brother exiting the house, and Appellant testified he saw C.H.'s brother come out of the house while he waited for

C.H.    The sender of the messages discussed the need to purchase gas, and Appellant confirmed he went to a gas station to purchase gas immediately after picking up C.H.

**{¶17}** We find the testimony of C.H. and her stepmother was sufficient to authenticate the messages.  In addition, we find the distinctive contents of the messages, coupled with Appellant's testimony, served to authenticate the messages.  We find the trial court did not err in admitting the messages into evidence.

**{¶18}**  The first assignment of error is overruled.

II.

**{¶19}**  In his second assignment of error, Appellant argues the trial court erred in admitting Lorena's testimony when she questioned C.H. C.H. stated she and Appellant engaged in sex.   The trial court admitted the hearsay statement as an excited utterance pursuant to Evid. R. 803(2). Appellant argues C.H. had a period of time for reflection after being dropped off by Appellant, and the statement no longer qualified as an excited utterance.  He further argues she had a motivation to lie because she knew she would be in trouble with Lorena for leaving the house without permission.

**{¶20}**  "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶21}**  A statement which is otherwise considered hearsay may be admissible as an excited utterance when the following four criteria are met: "(1) an event startling

enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event." *In re C.C.*, 8th Dist. Cuyahoga Nos. 88320, 88321, 2007-Ohio-2226, ¶ 50, *citing State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361 (1996).

**{¶22}** In *State v. Taylor*, 66 Ohio St.3d 295, 304, 612 N.E.2d 316 (1993), the Supreme Court recognized children are likely to remain in a state of nervous excitement longer than an adult, and therefore held "admission of statements of a child regarding sexual assault may be proper under the excited utterance exception even when they are made after a substantial lapse of time." The *Taylor* court also held there is no per se amount of time after which a statement can no longer be considered to be an excited utterance; the central requirements are the statement must be made while the declarant is still under the stress of the event, and the statement may not be a result of reflective thought. *Id.*

**{¶23}** Although the exact amount time which elapsed from the sexual conduct to the statement C.H. made to her stepmom is not clear from the record, she made the statement the same day as the alleged sexual conduct. Lorena testified when C.H. arrived at Lorena's place of employment, C.H. began crying, her clothes were "shuffled," she had a hickey on her neck, and she was walking in an unusual manner. We find the trial court did not abuse its discretion in admitting the statement as an excited utterance. While Appellant argues she had motivation to lie because she snuck out of the house without permission and knew she could be in trouble, we find such motivation goes to the weight to be given the statement, not to its admissibility.

**{¶24}** The second assignment of error is overruled.

III., IV.

**{¶25}** In his third and fourth assignments of error, Appellant argues the judgment convicting him of two counts of unlawful sexual conduct with a minor is against the manifest weight and sufficiency of the evidence. He specifically argues he testified he did not engage in sexual activity with C.H., there is a lack of scientific evidence and evidence of injury to support the conviction, C.H.'s testimony is not credible, and the State did not establish Appellant knew the victim's age or was reckless in disregard to her age.

**{¶26}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶27}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶28}** Appellant was convicted of two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which provides, "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the

offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

{¶29} C.H. testified Appellant took her to his storage unit, where there was a mattress on the floor. She testified Appellant engaged in both vaginal and anal sexual intercourse with her in the storage unit. We find this testimony sufficient, if believed by the jury, to establish Appellant engaged in sexual conduct with C.H.

{¶30} Chandra testified when she started dating Appellant in 2010, she was 17 years old, and Appellant was aware her other siblings were younger than she was. Lorena testified when Appellant dated Chandra, he came to the house often. She testified C.H. was 10 or 11 years old at the time, and Appellant interacted with her. She further testified Appellant was at the house for birthday parties for the younger children. We find this evidence was sufficient, if believed by the jury, to prove Appellant was either aware of C.H.'s age, or was reckless in regard to her age. Based upon the testimony of C.H., Lorena, and Chandra, we find the evidence was sufficient to support the convictions.

{¶31} We further find the jury did not lose its way in finding Appellant guilty, and the verdict is not against the manifest weight of the evidence. While some details varied between C.H.'s testimony at trial and her prior statements to law enforcement regarding whether the incident occurred at a house or a storage unit, whether he had vaginal intercourse with her before or after anal intercourse, and whether Appellant took his shirt off, there was also substantial evidence presented to corroborate C.H.'s testimony. The Y-STR DNA evidence presented included Appellant's profile in DNA found in C.H.'s vagina, and approximately 150 unrelated males would need to be tested before seeing a similar profile. Although the male DNA profile taken from the perianal swab of C.H. was

insufficient to include anyone, the profile found on the swab did not exclude Appellant. Further, Appellant was included on the traditional DNA profile taken from the hickey on C.H.'s neck at a frequency of one in one trillion unrelated individuals. The nurse who examined C.H. noted her hymen was bruised and bleeding, which she described as an acute injury.

{¶32} Further, both Chandra and the record keeper for the company which owned Appellant's storage unit testified the unit had a mattress laying on the floor. Chandra testified during this time frame she went to the unit with Appellant and they removed a box fan and a large screen television, both of which C.H. testified she observed in the storage unit. We find the jury did not lose its way in believing C.H.'s testimony rather than Appellant's testimony.

{¶33} The third and fourth assignments of error are overruled.

V.

{¶34} In his fifth assignment of error, Appellant argues the trial court committed plain error in failing to merge the convictions.

{¶35} Appellant concedes he did not raise the issue of merger in the trial court. An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Accordingly, an accused has the burden to demonstrate a reasonable probability the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus. *Id.* Absent such showing, the accused cannot demonstrate

the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error. *Id.*

**{¶36}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence. When considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A), both the trial court and the reviewing court on appeal must first take into account the conduct of the defendant. *Id.* In other words, how were the offenses committed? *Id.* If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation. *Id.*

**{¶37}** Different sexual acts occurring in the same encounter are not allied offenses of similar import. *See, e.g.*, *State v. Jones*, 5th Dist. Licking No. 09-CA-95, 2010-Ohio-2243 (unlawful sexual conduct with a minor by digital penetration and cunnilingus were not allied offenses of similar import even when committed in a short time span); *State v. Waters*, 5th Dist. Ashland No. 03-COA-002, 2003-Ohio-4624 (unlawful sexual conduct with a minor by vaginal intercourse and/or digital penetration, and fellatio or cunnilingus were not allied offenses of similar import); *State v. Brown*, 3rd Dist. Marion No. 9-09-15, 2009-Ohio-5428 (exposing penis to have victim touch it, touching the victim's breast, and touching victim's vagina with his penis after ejaculation were separate acts and did not merge); *State v. Ludwick*, 11th Dist. Ashtabula No. 2002-A-0024, 2004-Ohio-1152 (vaginal rape, fellatio, and rape by means of forcing the victim to digitally penetrate her

anus are not allied offenses); *State v. Kalka,* 8th Dist. Cuyahoga No. 106339, 2018-Ohio-5030 (touching victim's breasts and touching victim's vaginal area are not allied offenses of similar import); *State v. Stites*, 1st Dist. Hamilton No. C-190247, 2020-Ohio-4281(defendant performing cunnilingus on victim and victim performing cunnilingus on defendant are different sex acts and not allied offenses of similar import).

**{¶38}** We find Appellant's acts of engaging in vaginal intercourse with C.H. and engaging in anal intercourse with C.H., even though committed close in time, are different sexual acts which were committed separately, and are not allied offenses of similar import. We find the trial court did not commit plain error in failing to merge the convictions.

**{¶39}** The fifth assignment of error is overruled.

VI.

**{¶40}** In his sixth assignment of error, Appellant argues his trial counsel was ineffective for failing to seek merger of the convictions as allied offenses of similar import.

**{¶41}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶42}** For the reasons set forth in our discussion of Appellant's fifth assignment of error, we find Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel requested merger of the offenses.  We find Appellant has not demonstrated ineffective assistance of trial counsel.

**{¶43}** The sixth assignment of error is overruled.

**{¶44}** The judgment of the Fairfield County Common Pleas Court is affirmed.


By: Hoffman, J.

Baldwin, P.J.  and

Wise, Earle, J. concur