[Cite as *State v. Nigro*, 2022-Ohio-2864.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MICHAEL T. NIGRO, | : | Case No. 2021CA00084 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                  of Common Pleas, Case No. 2020
                                  CRI1848A


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 August 16, 2022


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE STONE                                GEORGE URBAN
Prosecuting Attorney                      116 Cleveland Ave. N.W.
Stark County, Ohio                        Suite 808
                                          Canton, Ohio 44702
By: VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South, Ste. 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1}   Appellant, Michael T. Nigro, appeals his conviction in the Stark County Court of Common Pleas as well as the trial court's admission of text messages from a cell phone.  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}   This case arose from a breaking and entering into a pharmacy and theft of drugs from that pharmacy in the early morning hours of November 23, 2019 in Massillon, Ohio. The events leading to the break-in began with a telephone call from Allison Roach to her drug dealer, JC.  JC told Roach he did not have the pills she requested, but he could get some if she drove.  She agreed and picked up JC after she finished work at about 10:30 p.m.

{¶3}   Roach picked up JC in Reynoldsburg and JC asked that they stop for Mike in Columbus.   She picked up Mike and noted that he had a red bookbag.  She drove to a home in Massillon, Ohio, where Mike and JC went inside and asked her to wait in the car. Later, she was asked to come into the home where the group stayed for a short time before leaving with a fourth person named Tony. They drove to a cul-de-sac and the three men got out of the car and told Roach they would be back.  They were gone for few minutes then came running back to the car, out of breath.  Tony told Roach to move over, he got into the car, took off gloves, dumped the red book bag and pill bottles at her feet and drove off.

{¶4}   Tony's fast and erratic driving caught the attention of local police officers and they gave chase.  Tony drove into a dead end road and stopped.  All three men got out of the car and ran off, leaving Roach to be arrested by the Massillon Police.

{¶5}    Officer Jacob Miller of the Massillon Police Department pursued one of the three men and apprehended JC Taylor.  Another officer who responded to the scene recovered the red bookbag that was discarded during the chase and Officer Miller found drugs from the pharmacy in it. Officer Miller searched the vehicle and found a crowbar, gloves and three cell phones, a blue one in the front seat and the others in the back seat.

{¶6}    Officer Miller took Allison Roach into custody and had a conversation with her at the scene.  Roach later participated in a photo lineup in an attempt to identify the others that were with her in the vehicle.  Officer Gohlike of the Massillon Police Department presented the photographs for Roach's review and she was able to identify Nigro in the lineup.  She did have some difficulty, but explained that his appearance since the photograph had changed slightly.  Nevertheless, she did sign the form presented by Officer Gohlike confirming that she was certain that the person in the photo was the person in the vehicle.

{¶7}    Detective Dadisman of the Massillon Police Department began working on the case and obtained a warrant to inspect the data recorded on the phones. The phones were submitted to the Jackson Township Police Department with the request to download the information using Cellebrite.

{¶8}    Sergeant Josh Escola from the Jackson Township Police Department was asked to extract information from the cellphones found in the vehicle.  He was able to download all of the relevant information from a phone that had the word "QLINK" on the back, placed it on a thumb drive and returned the phone and the drive to the Massillon Police Department. He was also able to extract information from another of the phones, but the third was inaccessible.

**{¶9}** Once Detective Dadisman received the report he was able to view the information on two of the cell phones, including phone numbers, photographs, text messages and names. The detective used the information in the report to find the phone numbers assigned to the cell phones and he entered those numbers into a search referenced in the record as TLO.  He concluded that one phone was connected to JC Taylor-Edwards, one of the men in the car, and the other to a person named Chelsea Evans. This latter phone was later identified to be a phone used by appellant, Michael Nigro.

**{¶10}** Detective Dadisman concluded the phone registered to Chelsea Evans was used by Nigro after reviewing data on the phone: photographs, phone calls and text messages that were signed "Mikey" and text messages that correlated directly with the activities that were planned. Information on the phone also corresponded with an address where Roach testified they stopped before the incident occurred. There were text messages to a girlfriend saying "wish me luck" and "if anything happens grab all my stuff" approximately one-half hour before the incident. The text messages on the phone registered to Evans and identified as being used by Nigro matched the texts with JC Taylor's phone in relation to the address that was given in the plan to break into the pharmacy. Further, the detective identified photographs of Nigro on the phone.

**{¶11}** The state also reviewed a security video from a neighbor of the pharmacy which showed three men running to the pharmacy and disappearing through the front door.

**{¶12}** The Stark County grand jury indicted Appellant, Michael T. Nigro with three counts of violating R.C. 2925.11 (A)(C)(l)(c),  aggravated possession of drugs, a felony

of the second degree; a violation of R.C. 2925.11 (A)(C)(2)(b), possession of drugs, a felony of the fourth degree; a violation of R.C. 2913.02 (A)(I), theft of drugs, a felony of the fourth degree; and a violation of R.C. 2911.13(A), breaking & entering, a felony of the fifth degree.

{¶13} Nigro entered a plea of not guilty and the matter was presented to a jury on July 22, 2021. The jury returned a guilty verdict and Nigro was sentenced to aggregate indefinite minimum sentence of seven years and a maximum sentence of ten and one-half years.

{¶14} Nigro filed a notice of appeal and submitted four assignments of error:

{¶15} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶16} "II. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶17} "III. THE MODIFICATIONS TO SENTENCING FOR FIRST AND SECOND DEGREE FELONIES MADE BY THE REAGAN TOKES ACT VIOLATE THE APPELLANT'S RIGHT TO JURY TIRAL(sic), AS PROTECTED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE SEPARATION OF POWERS DOCTRINE EMBEDDED IN THE OHIO CONSTITUTION."

{¶18} "IV. THE TRIAL COURT ERRED BY ADMITTING TEXT MESSAGES AND PHOTOGRAPHS FROM CHELSEY EVANS' CELLULAR PHONE THAT WAS PURPORTEDLY USED BY APPELLANT AS APPELLEE FAILED TO, AS A CONDITION PRECEDENT TO ADMISSIBILITY, PRESENT SUFFICIENT EVIDENCE TO

AUTHENTICATE THAT APPELLANT WAS THE PERSON USING THE CELLULAR PHONE TO ORIGINATE, SEND, AND RECEIVE TEXT MESSAGES."

**I., II.**

**{¶19}** In his first and second assignments of error, Nigro contends the conviction was not supported by sufficient evidence and against the manifest weight of the evidence. Because these assignments of error are closely related we will consider them simultaneously.

**{¶20}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, quoting *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), quoting *Thompkins* at 386.

**{¶21}** To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " 'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

**{¶22}** In the context of these assignments of error, Nigro is not arguing that the offenses described in the indictment did not occur, nor is he arguing that the state failed to prove all the elements of the offense.  Instead he contends that state did not establish that he was one of the persons who committed the offense because "the only evidence to link Appellant to the charges was the unreliable and self-serving testimony of Allison Roach and the cell phone records extracted from Chelsey Evans' cell phone."

**{¶23}** Allison Roach identified Nigro, in a lineup and in court, as one of the three men that she transported to Massillon to the vicinity of a pharmacy.  The men exited the vehicle together, with a red book bag provided by Nigro, returned in a rush, jumped in the car and spilled bottles of drugs from the book bag at Roach's feet.  One of the men took

the driver's seat, recklessly drove away and was pursued by Massillon Police into an alley with no outlet Nigro and the other two men jumped from the car and ran from the scene.

**{¶24}** Nigro points to portions of Roach's testimony that he contends reveal her as unreliable and self-serving, attacking Roach's credibility and motivation. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) quoting *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); State v. Burke, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, quoting *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

**{¶25}** Nigro offers no argument regarding the cellphone evidence in this assignment of error, aside from describing as Chelsey Evans' cell phone. And while we recognize that the phone evidence was circumstantial, circumstantial evidence has the same probative value as direct evidence. *Jenks,* paragraph one of the syllabus, *supra.*

**{¶26}** Nigro's argument focuses on the credibility of a witness and the weight to be given evidence, but we have consistently found that the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best

opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159. *State v. Schoeneman,* 5th Dist. Stark No. 2017CA00049, 2017-Ohio-7472, ¶¶ 21-23.

**{¶27}** We find that the record contains sufficient evidence, if believed, that would convince a rational juror beyond a reasonable doubt that Nigro was one of the three men that committed the offenses described in the indictment, consequently, the conviction was supported by sufficient evidence. Likewise, after reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in resolving conflicts in the evidence, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**{¶28}** Nigro's first and second assignments of error are overruled.

**III.**

**{¶29}** In his third assignment of error, Nigro contends that "the modifications to sentencing for first and second degree felonies made by the Reagan Tokes Act violate the appellant's right to jury tiral(sic), as protected by the Fifth And Fourteenth Amendments to The United States Constitution, and the Separation of Powers Doctrine embedded in the Ohio Constitution."

**{¶30}** Nigro does not offer an argument, reasons in support of his contentions or citations to the authorities, statutes, and parts of the record on which he relies failing to carry the burden of demonstrating an error on appeal. See, App.R. 16(A)(7); *See, State v. Gulley*, 5th Dist. Stark No. 2006CA00114, 2008-Ohio-887, ¶ 12. "It is the duty of the

appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. United*, 5th Dist. No. CT2006-0005, 2007-Ohio-1804, at ¶ 141, quoting *State v. Taylor*, 9th Dist. No. 2783-M (Feb. 9, 1999). See, also, App.R. 16(A)(7). "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *State v. Romy*, 5th Dist. No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, ¶ 35, quoting *Thomas v. Harmon,* 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, 2009 WL 1913281, at ¶ 14, internal citation omitted. Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Id.,* quoting *Frye v. Holzer Clinic, Inc.*, 4th District Gallia No. 07CA4, 2008-Ohio-2194, at ¶ 12. See, also, App.R. 16(A)(7); App.R. 12(A)(2). Consequently, we may disregard arguments if an appellant fails to identify the relevant portions of the record upon which he bases his argument. See App.R. 12(A)(2); Loc.R. 7(E). *Id.,* ¶ 12.

{¶31} We find that Nigro has not presented an argument, but relies only upon the assertion of error and thus we may disregard this assignment. But, even if we were to consider the matter based upon the assertion in the assignment of error, the outcome would remain unchanged. Since the filing of Nigro's brief, the Supreme Court of Ohio has determined that the constitutionality of the Reagan Tokes Act is ripe for consideration. *State v. Maddox,* —— Ohio St.3d ——, 2022-Ohio-764, —— N.E.3d ——. This court has considered the issue and concluded held that Reagan Tokes was constitutional and did not violate due process, the separation of powers doctrine, the right to a jury trial or the right to equal protection. *State v. Burris*, 5th Dist. Guernsey No. 21CA000021, 2022-Ohio-1481, *State v. Ratliff*, 5th Dist. Guernsey No. 21CA000016, 2022-Ohio-1372, ¶ 64, and

*State v. Williams*, 5th Dist. Coshocton No. 2021CA0003, 2022-Ohio-2002, ¶ 10 For the reasons stated in Burris, *Ratliff*, and *Williams, supra*, we find the Reagan Tokes Law does not violate Nigro's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers.

**{¶32}** In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. See, *e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470.

**{¶33}** Nigro's third assignment of error is overruled.

## IV.

**{¶34}** In his fourth assignment of error, Nigro contends the trial court erred by admitting text messages and photographs from Chelsey Evans' cell phone that was purportedly used by him, as Appellee failed to, as a condition precedent to admissibility, present sufficient evidence to authenticate that Appellant was the person using the cellular phone to originate, send, and receive text messages. In support of this contention, Nigro relies upon Evid. R. 901(B)(6) regarding authentication of telephone conversations, contends that the text messages identify the user of the phone as Mikey without a last name and without evidence that Nigro uses the name Mikey, and that there was no testimony from the recipient of the messages. Nigro contends that without this evidence, the text messages were improperly admitted as they were not authenticated.

**{¶35}** Under Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This rule invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be. *State v. Roseberry,* 197 Ohio App.3d 256, 268, 2011–Ohio–5921, 967 N.E.2d 233, 242, ¶ 65 (8th Dist.). This standard is less demanding than preponderance of the evidence. *Id.* The proponent must demonstrate only a "reasonable likelihood" that the evidence is authentic, which may be supplied by the testimony of a witness with knowledge*. Id.;* Evid.R. 901(B).

**{¶36}** Given the low threshold for admissibility, we emphasize that there are a multitude of ways in which the cell phone text messages could be authenticated such that they would be admissible. While in many cases text messages are authenticated by the testimony of the recipient, this is by no means the only method of authentication. *State v. Thomas*, 11th Dist. No. 2017-P-0094, 2019-Ohio-2795, 139 N.E.3d 1253, ¶¶ 52-53.

**{¶37}** The text messages at issue in this case were recovered from a cell phone found in the car in which the three men who are accused of breaking into the pharmacy were riding before and after the offense occurred.  All three hurried from the car after it stopped, so it is not unreasonable to conclude that they left the three phones behind. The Massillon Police Department obtained a warrant to examine the content of the phones and, by using computer technology, they were able to access the data in two of the phones.  Only one, registered to a Chelsey Evans, is relevant to this analysis.

**{¶38}** Though registered to Chelsey Evans, the phone contained text messages from and to a person who identified himself as Mikey, which can reasonably be interpreted

as referring to appellant Michael Nigro.  The other men in the car were named JC Taylor-Edwards and Anthony Scipone, and there is no evidence they were using Mikey as an alias while they were exchanging messages. (Trial Transcript, p. 56, lines 18-21).

**{¶39}** The Massillon Police officer testified that the timing of the text messages corresponded with the chronology described by Roach, the owner and the driver of the vehicle.  She recalled driving the vehicle from Columbus to Reynoldsburg and then to Massillon and messages occurred within the time frame of the trip.

**{¶40}** Further, the messages "correlated directly to JC Taylor-Edwards about the activities that were going to proceed" and the phone contained photographs identified as Nigro.  (Trial Transcript, p. 57, lines 9-14; p. 60, lines 11-15; p. 66, line 2, to p. 67, line 14). One message to a Natasha, approximately thirty minutes prior to the break-in, asked her to wish him luck, told her that he loves her and that if anything happens grab all my stuff. (Trial Transcript, p. 63, lines 14-23).

**{¶41}** Evid.R. 901(A) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  "Circumstantial, as well as direct, evidence may be used to show authenticity." *State v. Vermillion,* 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶ 14.

**{¶42}** In the case before us, we find sufficient circumstantial evidence to demonstrate that the text messages were delivered by Nigro.  The phones were found in the car that transported Nigro to Massillon.  The phones contained messages to and from JC Taylor-Edwards, another passenger and suspect in the offense, and the timing and content of the messages were described as consistent with the commission of the break-

in.   And the phone contained photographs of Nigro.   These facts are sufficient to overcome the low bar of authenticity imposed by Evid. R. 901.   Argument regarding the quality of this evidence goes to its weight and persuasiveness and does not support Nigro's argument that the text messages should have been excluded.

**{¶43}** Nigro's fourth assignment of error is overruled.

**{¶44}** The decision of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.