[Cite as *State v. Perenkovich*, 2025-Ohio-521.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. Michael D. Hess, V.J. |
| Plaintiff-Appellant | : | Hon. Jason P. Smith, V.J. |
|  | : |  |
| -vs- | : | Judge Hess and Judge Smith |
|  | : | Sitting by Assignment of the |
| NICOLE PERENKOVICH | : | Supreme Court of Ohio |
|  | : |  |
| Defendant-Appellee | : | Case No. 2024 CA 00046 |
|  | : |  |
|  | : |  |
|  | : | OPINION |


CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
Court of Common Pleas, Case No. 23-CR-2195

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    February 13, 2025

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
BY: LISA A. NEMES
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant

JACOB T. WILL
121 South Main Street, Suite 520
Akron, OH 44308

*Hess,V.J.,*

{¶1}   Appellant Nicole Perenkovich appeals her conviction and sentence from the Stark County Court of Common Pleas.  Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2}   Appellant was indicted by the Stark County Grand Jury on September 27, 2023, on the following charges:  Count One – aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2)(C)(1)(e), a felony of the first degree and Count Two – aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(d), a felony of the first degree. Appellant entered a plea of not guilty to both charges.

{¶3}   A jury trial was held in November of 2023 on the charges.  However, it ended in a mistrial when the jurors inadvertently were able to access information on an exhibit (cell phone) that was not properly entered into evidence.  Accordingly, the trial court re-set the matter for trial.

{¶4}   Counsel for appellant filed a motion to suppress on February 8, 2024, seeking to suppress "the use of any evidence obtained during the search of [appellant's] home and vehicle on September 18, 2023" because officers entered and searched her home and vehicle without permission or a warrant.

{¶5}   On February 16, 2024, the trial court denied appellant's motion to suppress. The trial court found: when appellant met with her parole officer in front of her residence, she admitted to smoking methamphetamines, and also had a pipe in her purse that she used to smoke methamphetamines; her statements amounted to a violation of her parole and triggered a proper search of appellant's residence, person, and vehicle; it was only after appellant made those admissions to her parole officer that he contacted other

officers to assist due to his safety; and appellant previously signed a "conditions of supervision" document in which appellant agreed "to the warrantless search of [her] person, motor vehicle, place of residence, personal property, or property that I have been given permission to use, by my supervision officer or other authorized personnel of the Ohio Department of Rehabilitation and Corrections at any time."

{¶6} A jury trial was held from February 21 to February 22, 2024.

{¶7} Officer Dominic Paolucci is a parole officer with the State of Ohio and is on the FBI Safe Streets Task Force. Paolucci supervises appellant's probation. He met with appellant on September 18, 2023, after contacting her to let her know he was going to meet with her. Appellant initially was not at the home but pulled up in a silver sedan. Appellant and Paolucci then entered the house. When they spoke in the living room, Paolucci noticed appellant was speaking very fast. He asked appellant if she had used any illegal drugs. Appellant admitted to using methamphetamine. Once appellant admitted she used methamphetamine, she was in violation of her conditions of probation, and thus Paolucci needed to conduct a "parole search" of her residence.

{¶8} As the conversation continued, appellant admitted to having a pipe in her purse. Paolucci then radioed to other officers that he needed assistance. Agent Logan Barnhill, Officer Jordan Shank, and Officer Jason Gerber conducted the search. While they conducted the search, Paolucci was keeping watch of appellant since she was not handcuffed. A scale was found in appellant's home, and a bag of crystal-like substance was found in her car. They also found three cellphones: one in appellant's purse, one on the coffee table in the living room of appellant's home, and one in appellant's vehicle. Paolucci felt the scales and multiple cell phones were indicative of drug use.

{¶9} On cross-examination, Paolucci testified he was not wearing a body camera, and that when he reviewed the contents of one of the phones, he did not see any conversations about drug sales or drug use on the phone.

{¶10} Jordan Shank of the Canton Police Department and the FBI Safe Streets Taskforce was initially down the street when Paolucci made contact with appellant and observed appellant pull into her driveway in a silver Chevy Malibu. He observed appellant get out of the Chevy Malibu. He went to appellant's home once Paolucci radioed that he needed assistance with a parole violation search. Shank searched the one bedroom that was in use and found a digital scale containing a crystal-like substance on the nightstand. Shank testified a digital scale is indicative of both drug using and drug trafficking. Shank located cell phones within some bins in the bedroom, but they were not taken into evidence. Shank confirmed a bag containing two additional clear bags with methamphetamine were located in the silver Chevy Malibu. Shank believes the amount found is indicative of a drug trafficker. Shank testified to multiple cell phones found at the scene. One phone was found in the glove box in the Chevy Malibu, one was found in the living room of appellant's home, and one found in appellant's purse. Shank stated multiple cell phones are indicative of drug trafficking.

{¶11} Shank transported appellant to the jail. During that ride, appellant asked to make a phone call, which he permitted. While taking on the phone, appellant stated, "Yeah they found it * * * Yeah, in my Malibu." A week later, Shank listened to a recorded phone call during which appellant stated the methamphetamine was hers and she gives it to the people she associates with. During a second jail call, appellant was trying to get someone to delete items from a phone.

{¶12}   Search warrants were obtained for the cell phones collected at the scene. When Shank started to describe photos found on the living room phone, counsel for appellant objected, stating the photographs were not properly authenticated because Shank viewed the photos via a "photo dump" or a "data dump."   Counsel for appellee stated Shank did not view the photographs as part of a "photo dump," but rather he was the one who actually viewed the photographs on the phone.  Counsel for appellant stated, "so he's the guy that went through the phone?" Counsel for appellee answered, "Yeah, and he'll be able to testify to these."  No further discussion was held and the trial resumed.

{¶13}   Shank testified Exhibits 8A, 8B, and 8C were "screen grabs" from the phone of a thread within an app called Signal, which is an encrypted app often used to prevent law enforcement from observing the messages.   On September 17, a day prior to appellant meeting with Paolucci, there were messages stating, "Ok money's in the driver's door in the middle where the Walmart sign is lit up," "Put it in there like in the passenger's seat or something, then cover it up with that Panda Express bag and then just lock the driver's door all the other doors are locked just press the actual lock down,"  and "Hand-to-hand is bad in North Canton."  Based on his training and experience, Shank interpreted these messages as appellant directing the individual where to "drop the dope off" and how to secure the vehicle.  Officers located a Panda Express bag in the Chevy Malibu. The methamphetamine was located in the Panda Express bag.

{¶14}   Shank stated Exhibits 9A, 9B, 9C, and 9D were photos from the living room phone.   The photos were: a selfie of appellant with an African American male, a photograph of appellant's social security card, and a photograph of appellant's state identification.   Shank testified Exhibits 10A, 10B, and 10C were photographs of a text

thread on the living room phone on both September 17 and September 18 talking about "half a pound in the house," which is consistent with the amount of methamphetamine found in the Chevy Malibu. Shank confirmed the photographs and messages were fair and accurate representations of what they purportedly depict.

{¶15} On cross-examination, Shank stated that he did not contact the phone company to determine who the phones were registered to. Also on cross-examination, counsel for appellant introduced photographs taken from the living room phone and asked Shank about the photographs because the photographs displayed individuals other than appellant.

{¶16} FBI Agent Logan Barnhill is assigned to the FBI Safe Streets Task Force. Initially, Barnhill was stationed down the street from appellant's house on September 19, 2023. Barnhill observed appellant arrive at her residence in a silver Chevy Malibu. He saw appellant exit the vehicle and proceed to make contact with Paolucci. After Paolucci called for the parole violation search, Barnhill searched the Chevy Malibu. He located a bag of methamphetamine in the front passenger area and a cellphone in the glove compartment.

{¶17} Alexis Kimble, a forensic scientist from the Stark County Crime Laboratory, tested the substance the officers found in the Chevy Malibu. She determined the substance to be a total of 231 grams of methamphetamine. The bulk amount of methamphetamine is 3 grams. She testified the digital scale had traces of methamphetamine.

{¶18} Larry Mackey, a forensic scientist at the Stark County Crime Laboratory, reviewed evidence for fingerprints. He did not find any fingerprints on the plastic bags containing the methamphetamine, which is common.

{¶19} At the close of appellee's case, appellee introduced their exhibits into evidence. Counsel for appellant did not object to the admission of Exhibits 8A-C, Exhibits 9A-D, or Exhibits 10-A-C. Counsel for appellee objected to the admission of State's Exhibit 12, a copy of a text message from the phone found in the car. Counsel argued it was not authenticated by the officer or appellant. The trial court admittee Exhibit 12 over appellant's objection. Appellant made a Criminal Rule 29 motion. The trial court overruled the motion.

{¶20} Diedre Patterson, appellant's mother, testified she believes the drugs located at appellant's home and in the car belong to her stepdaughter. Further, that both appellant and her stepdaughter had access to the Chevy Malibu in September of 2023, during which time Patterson was the registered owner of the vehicle. On cross-examination, Patterson testified she never contacted either the police or the FBI with any of the information she testified to at the trial.

{¶21} Appellant testified that while she owned the home, her sister lived with her in September of 2023. Appellant stated while she was driving the Chevy Malibu on September 18, she had not previously used it that weekend. Appellant was on parole for 2019 aggravated drug trafficking and aggravated drug possession convictions at the time of her arrest in this case. Appellant admitted she told Paolucci she had a pipe in her purse and admitted to him she was getting high. Appellant testified the drugs and phone found in the car were her sister's, and that the exhibits introduced by counsel for appellee

were not from her phone.  Appellant admitted the scale and the shards found on the pipe in her purse were her drugs, but testified she was not selling drugs.  Counsel for appellant renewed the Criminal Rule 29 motion at the conclusion of appellant's case.  The trial court denied the motion.

{¶22}  The jury found appellant guilty of:  aggravated trafficking of drugs pursuant to R.C. 2925.03(A)(2)(C)(1)(e), with the additional finding that the amount of methamphetamine equaled or exceeded fifty times the bulk amount but was less than one hundred times the bulk amount, and aggravated possession of drugs pursuant to R.C. 2925.11(A)(C)(1)(d), with the additional finding that the amount of methamphetamine equaled or exceeded fifty times the bulk amount but less than one hundred times the bulk amount.

{¶23}  The trial court sentenced appellant on March 4, 2024, to a minimum eight-year, maximum twelve-year prison term.  The trial court issued a judgment of conviction and sentencing entry on March 11, 2024.

{¶24}  Appellant appeals her conviction and assigns the following as error:

{¶25}  "I. THE TRIAL COURT ERRED IN SUBMITTING UNAUTHENTICATED DOCUMENTS INTO EVIDENCE.

{¶26}  II. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶27}  III. THE TRIAL COURT ERRED IN PREVENTING THE DEFENSE FROM PRESENTING A DEFENSE TO THE CRIMES CHARGED IN THE INDICTMENT."

I.

{¶28} In her first assignment of error, appellant argues the trial court committed error in submitting "unauthenticated documents" into evidence. Specifically, appellant contends State's Exhibits 8A-8C, 9A-9D, and 10A-10C were not properly authenticated because no testimony was offered about the phone numbers and no testimony was offered regarding any attempts made by law enforcement to locate the individuals involved in the conversations. Further, that the State improperly used photographs of a writing, rather than the actual text message, to prove the content of the text message. Appellant also cites to her own testimony that the phone at issue with the photographs and messages contained on it did not belong to her, and argues that, due to her testimony, the exhibits were not properly authenticated.

{¶29} The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269 (1991); *State v. Sage*, 31 Ohio St.3d 173 (1987).

{¶30} Under Evidence Rule 901(A), "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This rule invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be. *State v. Nigro*, 2022-Ohio-2864 (5th Dist.). This standard is less demanding than the preponderance of the evidence standard. *Id.* The proponent must demonstrate only a "reasonable likelihood" that the evidence is authentic, which may be supplied by the

testimony of a witness with knowledge.  *Id.*; Evid. Rule 901(B).  "Circumstantial, as well as direct, evidence may be used to show authenticity."  *Id.*

**{¶31}**  Due to the low threshold for admissibility, this Court has found that there are a multitude of ways in which cell phone text messages are authenticated by the testimony of the recipient; however, this is by no means the only method of authentication. *State v. Nigro*, 2022-Ohio-2864 (5th Dist.).

**{¶32}**  Appellant argues that since her trial counsel objected to use of the photographs and text messages, we should review the assignment of error under an abuse of discretion standard.  Appellee contends we should review the assignment of error under a plain error review.  Counsel for appellant did object to Shank's testimony with regards to these text messages and exhibits, stating there was not a proper foundation laid for the testimony of the officer because the messages and photographs came from a "photo dump."  Counsel for appellee explained that the exhibits were not the actual phone data, and were not obtained via a "photo dump."  Rather, they were pictures of the phone screen taken by Shank himself.  Counsel for appellee stated Shank "was the guy that went through the phone."  Counsel for appellant made no further arguments and the trial court did not actually rule on the objection.  Additionally, at the close of the State's case-in-chief, the State offered into evidence the photographs of the text messages to which Shank testified and appellant did not object to the admission of these exhibits.

**{¶33}**  We find that under either scenario (either a plain error analysis or an abuse of discretion analysis), the text messages and photographs were properly authenticated pursuant to Evidence Rule 901(A)-(B).

{¶34}  Shank testified that the exhibits contained photographs of text messages and images Shank himself took from the living room phone the officers collected during the search of appellant's home.  The officers testified that, during the search, appellant admitted that both of the phones found in the house (the living room phone and the phone in her purse) were hers, but denied ownership of the phone found in the Chevy Malibu.  At trial, appellant disputed claiming ownership of the living room phone, and testified it belonged to her sister.  Shank testified that, after the search, he took custody of the evidence and transported appellant to the jail.  He obtained search warrants for the three cell phones and was able to access the contents of the living room phone.

{¶35}  Shank possessed personal knowledge that the photographs were taken from the screen of a phone collected from appellant's living room during the search.  Shank also established that the phone from the living room table held personal identification and photographs linking the phone to appellant.  *State v. Fannon*, 2018-Ohio-5242 (4th Dist.) (text messages properly authenticated when an officer testified she retrieved and identified the messages from the phone and she sufficiently linked the defendant to the phone containing the text messages in question); *State v. Norris*, (text messages properly authenticated when state presented testimony and evidence that sufficiently linked appellant to the phone that contained the messages at issue).  This evidence was not obtained via a "photo dump" or "data dump," but rather from Shank himself testifying that he obtained the images from the phone during the investigation.

{¶36}  Shank testified the State's exhibits contained photographs of text messages and photographs he obtained from the phone laying on appellant's living room coffee table.  Thus, Shank properly authenticated the text messages and photographs under

Evidence Rule 901(A) ("the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims") and Evidence Rule 901(B)(1) (evidence can be authenticated by testimony of a witness with knowledge who testifies that a matter is what it is claimed to be). Shank had personal knowledge that the photographs of the text messages and photographs were from a phone found during the search of appellant's home. See *State v. Norris*, 2016-Ohio-5729 (2nd Dist.); *State v. Shaw*, 2013-Ohio-5292 (7th Dist.) (photographs can be admissible as an admission of party-opponent under Evidence Rule 801(D)(2) if they are properly authenticated). Thus, Shank properly authenticated the photographs of the text messages.

**{¶37}** These facts are sufficient to overcome the low bar of authenticity imposed by Evidence Rule 901. Any argument regarding the quality of the evidence goes to its weight and persuasiveness and does not support appellant's argument the text messages and photographs should have been excluded. Specifically, appellant's argument that there was a lack of proof that she had actually sent the text message or photographs concerns the weight of the evidence, rather than its authenticity. *State v. Sherman*, 2016-Ohio-4967 (5th Dist.).

**{¶38}** As to appellant's argument that the exhibits violated Evidence Rule 1002 because they "used photographs of a writing" instead of the actual text messages, appellant did not object to the evidence on these grounds at trial, either during Shank's testimony or when the exhibits were entered into evidence. Thus, appellant forfeited all but plain error, but neglected to develop a plain error argument on appeal. *State v. Gillard*, 2023-Ohio-2682 (5th Dist.).

**{¶39}** Additionally, we note that counsel for appellant cross-examined Shank regarding the photographs of the contents of the phone, as well as his knowledge of and efforts to determine who owned and operated each of the phones. Appellant also presented evidence (Defense Exhibits A-C) through Shank, relying on the same authentication process appellant now challenges. Appellant relied on Shank's testimony to authenticate photographs coming from the image gallery of the living room phone.

**{¶40}** Appellant's first assignment of error is overruled.

II.

**{¶41}** In her second assignment of error, appellant contends her trial counsel was ineffective for two reasons. First, because the motion to suppress failed to address newly-discovered evidence. Second, because trial counsel failed to object to hearsay testimony.

**{¶42}** To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). "Reasonable probability" is "probability sufficient to undermine the confidence in the outcome." *Id.*

**{¶43}** Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Id.* "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 2014-Ohio-5544 (5th Dist.).

{¶44} Appellant argues her trial counsel was ineffective for the failure to specifically move to suppress the "new evidence" found after the mistrial, specifically the text messages introduced by the State in Exhibits, 8A-C, 9A-9D, and 10A-C. "Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted." *State v. Sinclair*, 2020-Ohio-4860 (5th Dist.).

{¶45} We first note that counsel did file a motion to suppress, seeking to suppress the "use of any evidence obtained during the search of appellant's home and vehicle on September 18, 2023." Exhibits 8A-C, 9A-D, and 10A-C were obtained from a phone found during the search of appellant's home on September 18, 2023. Accordingly, counsel did file a motion to suppress with regards to this evidence. Further, we find, based upon the record, that the motion would not have been granted. As detailed in Assignment of Error I, we found the trial court did not commit error in admitting the evidence because Shank properly authenticated the evidence.

{¶46} Second, appellant argues her trial counsel improperly failed to object to the contents of the text messages on a hearsay basis because the State failed to provide any testimony from the cellular phone service provider.

{¶47} Trial courts are "vested with broad discretion in determining the admissibility of evidence in any particular case," including rulings on hearsay. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269 (1991). Evidence or testimony falling within the definition of "hearsay is generally not admissible unless it falls within one of the recognized exceptions." Evidence Rule 802. Several hearsay exceptions can apply to text messages, including text messages "involving a statement by a party opponent." *State v. Norris*, 2016-Ohio-5729 (2nd Dist.).

**{¶48}** While appellant argues that the "unavailability of the declarant-recipient of the text message was never addressed by the trial counsel or the court," she does not explain how Evidence Rule 804, or the availability of a declarant of text messages, would have supported an objection to the admissibility of the text messages. As we found in Assignment of Error I, Shank, based on his personal knowledge, properly authenticated the photographs of the text messages and images, and linked them to appellant. This is not a case where appellee sought to introduce phone records or data that would have required identification from a source familiar with such records. Rather, in this case, the witness identified the photographs or screenshots based on personal knowledge. The images in the case (photograph of appellant and her boyfriend, photographs of appellant's social security and identification cards) are not statements. Thus, they are not hearsay. The photographs of the text messages are either: (1) subject to the party-opponent exception to the hearsay doctrine or (2) statements not offered for the truth of the matter asserted, but rather to put the text messages into context. *Id.; State v. Williams*, 38 Ohio St.3d 346 (1988).

**{¶49}** Accordingly, we find appellant has failed to demonstrate either deficient performance by trial counsel or that trial counsel's errors prejudiced appellant. Appellant's second assignment of error is overruled.

III.

**{¶50}** In her third assignment of error, appellant argues the trial court committed error in preventing appellant from presenting a defense to the crimes charged in the indictment.

**{¶51}** The Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense." *State v. Swann*, 2008-Ohio-4837. However, this constitutional right is not absolute and "does not require the admission of *all* evidence favorable to the defendant." *Id.* "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Rock v. Arkansas*, 483 U.S. 44 (1987).

**{¶52}** The first portion of appellant's argument focused on appellant's first trial. However, that trial ended in a mistrial, and an entirely new trial was held. The second portion of appellant's argument is that she was prevented by the trial court from testifying that when Shank was advised of Mr. McQuain's (appellant's sister's boyfriend) potential involvement with the case, Shank told appellant to "call [McQuain] and tell him to come get his drugs." The trial court sustained the State's objection as to that testimony based on hearsay, but permitted appellant to discuss, in detail, further information about other potential suspects and the officers' interactions with her. Subsequent to the trial court sustaining this objection as to one-line of testimony, counsel for appellant did not offer any argument in response to the objection, nor did appellant proffer evidence or attempt to explain the relevance or admissibility of her intended testimony.

**{¶53}** Normally, an appellate court need not consider error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court. *State v. Williams*, 51 Ohio St.2d 112 (1977). Accordingly, a claim of error in such a situation is usually deemed to be waived absent plain error.

Criminal Rule 52(B). Appellant did not raise plain error with respect to any of the testimony. Because she does not claim plain error on appeal, we need not consider it. *State v. Gillard*, 2023-Ohio-2682 (5th Dist.).

{¶54} However, even if we were to consider appellant's argument, she would not prevail. In a plain error argument, appellant bears the burden to show that, but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice. *State v. Quarterman,* 2014-Ohio-4034.

{¶55} Appellant contends that because the trial court struck this sentence of her testimony, she was prevented from providing testimony about potential alternate suspects responsible for the methamphetamine. However, appellant was permitted to testify that her sister stayed at the home and had access to the car, the phone with the text messages and photos on them was her sister's, and that her sister's boyfriend lived in the home and had access to the car. Further, Patterson was permitted to testify about appellant's sister's continuing drug problems. Accordingly, we find appellant was permitted to provide detailed evidence about potential other suspects. It is apparent from the facts presented at trial that appellant cannot demonstrate a reasonable probability that, but for the exclusion or striking of the one sentence of her testimony about a potential other suspect, the jury would have acquitted her on the charges. There is no manifest miscarriage of justice in this case. Further, the trial court did not apply any rules that were "arbitrary" or "disproportionate to the purposes they are designed to serve."

{¶56} Appellant's third assignment of error is overruled.

{¶57} Based on the foregoing, appellant's assignments of error are overruled. The conviction and sentence entered by the Stark County Court of Common Pleas is affirmed.

By Smith, V.J.,

Hoffman, P.J., and

Hess, V.J., concur